**UNITED STATES of America, Appellee,**

v.

**Luis Alvaro HOYOS, Appellant.**

**No. 77–3236.**

United States Court of Appeals,
Ninth Circuit.

April 24, 1978.

William J. Redondo (argued), Tucson, Ariz., for appellant.

John G. Hawkins, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellee.

Before ELY and GOODWIN, Circuit Judges, and ENRIGHT,* District Judge.

ELY, Circuit Judge:

Hoyos appeals from his convictions of possession with intent to distribute methaqualone tablets, conspiracy to possess with intent to distribute methaqualone tablets, and distribution of methaqualone tablets, violations of 21 U.S.C. §§ 841(a)(1) and 846. We affirm.

## FACTS

Hoyos' convictions resulted from sales of methaqualone tablets to Drug Enforcement Administration (DEA) undercover agent Bachelier. According to the testimony of one Jimenez, another DEA undercover employee, Jimenez was contacted by a man named Cesar Castro several times and solicited to find customers to whom Castro might sell methaqualone pills. Jimenez, in turn, introduced Castro to a prospective buyer named "Tony," who, in truth, was agent Bachelier of the DEA. After preliminary negotiations, Castro, Jimenez, and Bachelier met together to arrange the details of the proposed sale to "Tony." Later, Castro and Hoyos picked up Jimenez on their way to meet "Tony" and consummate the sale. Upon meeting with "Tony," Castro and Hoyos left Jimenez with agent Bachelier, saying they would return shortly with the pills. Castro later returned in a different car with the pills and was arrested as the sale was made. Hoyos was observed driving by the location of the sale at the time of Castro's arrest, driving the same car he and Castro had used earlier when they picked up Jimenez. After a short chase, Hoyos was also arrested.

Hoyos was jointly charged with Castro in a three-count indictment for the offenses of which he was ultimately convicted. Prior to trial, Hoyos moved to sever his case from that of co-defendant Castro, supporting his motion with an affidavit signed by Castro stating that Castro was in possession of information which would tend to exculpate Hoyos. The Government did not oppose the motion, and severance was granted by the trial court. Castro pleaded guilty to the charges on July 15, 1977, and a sentencing date of August 12, 1977 was fixed. On July 18, 1977, Castro was subpoenaed by Hoyos to testify at the latter's trial, then scheduled for July 20, 1977. On July 19, 1977, Hoyos moved for a continuance of his trial date until after Castro had been sentenced because Castro had advised him that he would not testify until he had been sentenced. The Government stipulated to the continuance, and Hoyos' trial was reset for August 12, 1977 at 9:00 a. m., following Castro's scheduled sentencing at 8:15 a. m. that same morning. Castro failed to appear, either for his sentencing or to testify at Hoyos' trial. Hoyos again moved for a continuance to procure Castro's presence. The motion was denied, and the trial proceeded.

As part of the defense case, counsel for Hoyos called Castro's wife as a witness and attempted to elicit testimony from her as to a conversation in which she had engaged with her husband after his arrest. Hoyos' later offer of proof made clear that the testimony of Castro's wife was intended to supply the alleged exculpatory material that Castro might have provided. The Government's objection to the testimony, on

* Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

the ground that it constituted hearsay, was sustained. The defense requested at the end of trial that a so-called informer instruction be submitted to the jury. The trial court refused to give the informer instruction, finding that there was no informer involved in the case. As hitherto stated, Hoyos was found guilty by the jury on all three counts charged. He was sentenced to concurrent one-year terms of imprisonment on each count and a three-year special parole term.

In this appeal, Hoyos contends that the trial court erred in refusing his request for a continuance, in excluding the testimony of Castro's wife, and in refusing to submit his proposed instruction relating to informers.

### ISSUES

### I

In respect to his first contention, Hoyos argues that the trial court should have granted his request for a ten-day continuance so that Castro's presence could be procured.

■ The decision to grant or deny a requested continuance is within the trial court's discretion and will not be disturbed on appeal absent clear abuse of that discretion. *United States v. Hernandez-Berceda,* 572 F.2d 680 (9th Cir., 1978); *United States v. Thompson,* 559 F.2d 552 (9th Cir. 1977); *United States v. Lustig,* 555 F.2d 737 (9th Cir. 1977); *United States v. Brandenfels,* 522 F.2d 1259 (9th Cir. 1975). "When a continuance is sought to obtain witnesses, the accused must show who they are, what their testimony will be, that the testimony will be competent and relevant, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance on the day set for trial." *Leino v. United States,* 338 F.2d 154, 156 (10th Cir. 1964); *Dearinger v. United States,* 468 F.2d 1032 (9th Cir. 1972); *United States v. Harris,* 436 F.2d 775 (9th Cir. 1970); *McConney v. United States,* 421 F.2d 248 (9th Cir. 1969), *cert. denied,* 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d

49 (1970); *Powell v. United States,* 420 F.2d 799 (9th Cir. 1969).

■ The motion of Hoyos was defective in two significant respects. First, he did not establish with any precision what Castro's testimony would be or whether, in fact, Castro had unconditionally agreed to testify in Hoyos' defense. *See United States v. Gay,* 567 F.2d 916 (9th Cir. 1978) (conditional offer to testify for co-defendant as basis for severance). Second, and of more importance, Hoyos could not demonstrate that he could produce Castro as a defense witness if the continuance had been granted. Castro had already failed to appear for his own sentencing that same morning of Hoyos' trial. In view of the fact that Castro was a fugitive at the time of Hoyos' trial, we conclude that the trial court justifiably entertained grave doubt whether Castro could be produced as a witness. In similar circumstances, we have repeatedly upheld, as a proper exercise of discretion, the refusal of trial courts to grant continuances in order to procure absent witnesses. *See United States v. Thompson, supra; Dearinger v. United States, supra; McConney v. United States, supra; Powell v. United States, supra. See also Leino v. United States, supra.*

The trial court here did not abuse its discretion in denying the request for a continuance.

### II

Hoyos claims that the trial court erroneously excluded the testimony of Castro's wife concerning the alleged conversation she had with Castro after Castro's arrest. Hoyos does not deny the hearsay nature of the offered testimony; he argues that the testimony fell within either or both of the hearsay exceptions set forth in Fed.R.Evid. 804(b)(3) and (b)(5). We examine the applicability of each exception.

Fed.R.Evid. 804(b)(3), containing the declaration against penal interest exception which Hoyos urges, provides in pertinent part:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.*

(Emphasis supplied).

[4] The determination of admissibility under Rule 804(b)(3) is committed to the sound discretion of the trial court. *United States v. Satterfield*, 572 F.2d 687 (9th Cir., 1978); *United States v. Oropeza*, 564 F.2d 316, 325 (9th Cir. 1977). The test for admissibility is two-pronged: (1) whether the statement so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true, and (2) whether the corroborating circumstances clearly indicate the trustworthiness of the statement. *Id.*

■ We are satisfied that the trial court here properly exercised its discretion in excluding the offered testimony. First, an examination of the offer of testimony reveals it to be comprised largely of matter that is exculpatory of Hoyos but not significantly inculpatory of the declarant Castro. While the reach of Rule 804(b)(3) is not limited to direct confessions of criminal responsibility, *United States v. Benveniste*, 564 F.2d 335, 341 (9th Cir. 1977), the declarant's statements must, in a real and tangible way, subject him to criminal liability. Consequently, hearsay statements consisting principally of material exculpating a co-defendant are suspect, absent the concurrent presence of solidly inculpatory statements against the penal interest of the declarant. *See United States v. Oropeza, supra; United States v. Marquez*, 462 F.2d 893 (2d Cir. 1972). Second, we note that in Rule 804(b)(3) "Congress meant to preclude reception of exculpatory hearsay statements against penal interest unless accompanied by circumstances solidly indicating trustworthiness. This requirement goes beyond minimal corroboration." *United States v. Barrett*, 539 F.2d 244, 253 (1st Cir. 1976); *United States v. Satterfield, supra.* Our own court has indicated that the factors relevant to trustworthiness in this context include:

"(a) the time of the declaration and the party to whom it was made;

(b) the existence of corroborating evidence;

(c) the extent to which the declaration is really against the declarant's penal interest; and

(d) the availability of the declarant as a witness."

*United States v. Oropeza, supra*, at 325.

Reviewing these factors here, it appears, first, as in *Oropeza*, that "clear" corroboration was lacking. The statements attributed to Castro were not spontaneous. They were made only after his arrest. They were made to his wife and therefore could have been suppressed at a subsequent criminal prosecution under a claim of the confidential marital communications privilege. *See United States v. Lustig, supra.* There was scant evidence of independent corroborating facts. Moreover, the offered testimony was largely exculpatory in nature. In these circumstances, the trial court did not abuse its discretion in refusing to admit the testimony under the declaration against penal interest exception of Rule 804(b)(3).

Hoyos also claims that Rule 804(b)(5) provided a basis for the admission of the offered testimony. This portion of Rule 804 provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(5) Other exceptions. A statement not specifically covered by any of the forego-

ing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

By its plain language, the quoted section requires "equivalent circumstantial guarantees of trustworthiness." For the same reasons that the trial court properly refused the admission of the testimony under Rule 804(b)(3), it also ruled correctly in refusing to admit the testimony under Rule 804(b)(5).

### III

 Hoyos' last argument is that the trial court erred in refusing to give the jury his requested instruction as to the credibility of government informants. The requested instruction read:

> "The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant."

The trial court refused the instruction, believing that no "informer" was involved in the case.

Hoyos argues that Jimenez was an informer. "To be an informer the individual supplying the information generally is either paid for his services, or, having been a participant in the unlawful transaction, is granted immunity in exchange for his testimony." *United States v. Miller,* 499 F.2d 736, 742 (10th Cir. 1974). According to the testimony, Jimenez was an experienced Mexican police officer working for the DEA at the invitation of the DEA. Jimenez had been employed by the DEA as an undercover agent for two years at a set salary, although that arrangement had ended just prior to the trial. The Government's contention that Jimenez was a special undercover agent for the DEA is supported by the record. He was not a paid informant whose remuneration was tied to the sale of specific information, nor was he a participant in the crime with a promise of immunity.

Moreover, even if Jimenez did have attributes similar to the traditional "informer," we can find no prejudice resulting from the trial court's failure to give the requested special instruction. First, defense counsel was allowed extensive cross-examination. Any bias or prejudice entertained by Jimenez could have been presented to the jury for consideration, as it, in fact, was. Second, the trial court did give a general instruction relating to the credibility of witnesses, an instruction which admonished the jurors to examine "whether the witness had any motive for not telling the truth" and "whether the witness has any interest in the outcome of this case." In the circumstances of this case, any conceivable prejudice to Hoyos was thereby eliminated.

The judgment of conviction must be, and the same is hereby

AFFIRMED.