UNITED STATES of America, Plaintiff-Appellee,

v.

Robert STERLING, Defendant-Appellant.

No. 82–1640.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1983.

Decided Sept. 10, 1984.

* The Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

Francis Diskin, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Gerald L. Shargel, New York City, for defendant-appellant.

Before BROWNING, HUG and TANG, Circuit Judges.

TANG, Circuit Judge:

Appellant Robert Sterling was convicted of engaging in a continuing criminal enterprise, travelling interstate in aid of racketeering enterprises, possessing with the intent to distribute marihuana in excess of 1,000 pounds, conspiring to possess and distribute marihuana, and conspiring to import marihuana. Sterling on appeal raises numerous claims of trial error, including the allegation that the district court erred in allowing a government witness' testimony to stand despite the prosecutor's noncompliance with the Jencks Act, 18 U.S.C. § 3500. Sterling also argues that reversal is required as to the Continuing Criminal Enterprise conviction because insufficient evidence was introduced to support the jury's finding. We find two questions in this appeal worthy of extended discussion. They involve the Jencks Act "violation" and Sterling's attack on his Continuing Criminal Enterprise conviction. We find against Sterling as to these issues and because his other allegations of error are meritless, we affirm.

## I. FACTS

In late July, 1981, government narcotics agents uncovered a large scale marihuana smuggling operation in Bellingham, Washington. According to government witnesses, the Bellingham operation was initiated in 1980 when Robert Sterling began making arrangements to ship a large quantity of marihuana from Colombia to Washington. A Panamanian freighter, the "Islander", was purchased at Sterling's direction and loaded with approximately 25,000 pounds of marihuana. At the same time, Sterling's associates were preparing for the offloading of the marihuana in Washington. Two smaller vessels, the "Tiki" and the "Courageous" were acquired to transport the marihuana from the Islander to the Washington coast. Houses were rented in Bellingham and Mount Vernon, Washington, to be used as initial "stash houses" for the marihuana.

On the 26th of July, the Courageous met the Islander and approximately 5,000 pounds of marihuana was loaded onto the smaller boat. It arrived in Bellingham late that night and was off-loaded with the marihuana being transported to the Mount Vernon house. The Tiki was loaded after the Courageous, and it arrived in the Bellingham area on July 27, 1981. That evening, federal agents arrested those involved in the operation at the Bellingham and Mount Vernon locations.

Eight months after the original arrest, Sterling was arrested and charged by the government as the mastermind behind the Bellingham conspiracy. The bulk of the government's case against Sterling consisted of the testimony of individuals involved in the Bellingham scheme who had agreed to cooperate with the government. The government witnesses also testified concerning Sterling's involvement in other drug operations dating back to 1971. The major part of this testimony dealt with various importation and distribution schemes headed by Sterling in New York and Florida. The evidence implicated Sterling in numerous drug-related activities; beginning with rather small-scale transactions, increasing in sophistication to substantial importation schemes and culminating in the Bellingham operation.

Sterling was charged with one count of engaging in a continuing criminal enterprise (21 U.S.C. § 848), seven counts of travelling interstate in aid of racketeering enterprises (18 U.S.C. § 1952), two counts of importing marihuana (21 U.S.C. § 960), one count of possessing with the intent to distribute marihuana in excess of 1,000 pounds (21 U.S.C. § 841), one count of conspiring to possess with the intent to distribute marihuana (21 U.S.C. § 846) and one count of conspiring to import marihuana (21 U.S.C. § 963). After a nine-day jury trial, Sterling was convicted on all counts as charged. He was sentenced to forty years without possibility of parole on the Continuing Criminal Enterprise count and to four years each on the remaining sub-

stantive counts and fined a total of $225,-000. The sentences as to the racketeering, importation and possession counts were to run consecutively but concurrent with the criminal enterprise sentence. The district court also imposed special parole terms of life as to one of the racketeering counts, one of the importation counts and the possession count. Sterling was not sentenced on the conspiracy to import and conspiracy to distribute marihuana counts. Pursuant to Section 848(a)(2) of the Continuing Criminal Enterprise statute, the district court also ordered forfeiture as to seven real and personal properties owned by Sterling.

## II. JENCKS ACT VIOLATION

Sterling argues that the failure of the government to comply with the requirements of the Jencks Act, 18 U.S.C. § 3500, requires reversal of appellant's conviction as to the Continuing Criminal Enterprise count and the conspiracy to distribute marihuana charge. We disagree.

William Lasky was called by the Government to testify against Sterling seven days into the nine day trial. At that time, Lasky revealed to the prosecutor that he had testified earlier before a federal grand jury in New York in connection with a matter related to the Sterling prosecution. The Government ordered delivery of the grand jury transcript but the information did not arrive in time for defense counsel to use in preparing his cross-examination of the witness. At the close of cross-examination, the trial judge granted Sterling permission to recall Lasky when the New York transcript became available but the material did not arrive before the close of defendant's case. The defense moved to strike Lasky's testimony pursuant to 18 U.S.C. § 3500(d). The motion was denied by the trial court.

The government concedes that Lasky's grand jury transcript was producible under the Jencks Act, 18 U.S.C. § 3500(e). The government also admits that Lasky's New York grand jury testimony was not available to Sterling during cross-examination. The government argues, however, that the district court's decision not to strike the

testimony of Lasky due to the government's inadvertent inability to make Lasky's grand jury transcript available was well within the discretion of the trial court.

▇ The government's argument is well taken. A trial court has the discretion not to impose sanctions for noncompliance with the dictates of the Jencks Act. *United States v. Finnegan,* 568 F.2d 637, 642 (9th Cir.1977). *See also United States v. Parker,* 549 F.2d 1217, 1224 (9th Cir.) *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977) (trial judge has discretion to decide which sanctions, if any, should be assessed against the government for failure to comply with the Jencks Act); *United States v. Polizzi,* 500 F.2d 856, 893 (9th Cir.1974) *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975) (if the trial judge determines that a failure to disclose appears clearly to be harmless and is not a willful avoidance and egregious dereliction of the prosecutor's statutory obligation, then he need not invoke the drastic remedies of 18 U.S.C. § 3500).

In *Finnegan,* the defendant argued error in declining to impose sanctions upon the government for failing to produce interview notes of a government attorney which were discoverable under the Jencks Act. *Id.* at 642. The court held that even though the notes may have been subject to the provisions of the Jencks Act, the trial court had broad discretion in determining whether to impose Jencks Act sanctions. *Id.* The court stated that the trial court's decision whether to strike a witness' testimony should rest on (1) a consideration of the culpability of the government for the unavailability of the material and (2) the injury resulting to the defendants. *Id.*

The *Finnegan* court found that the trial court had not abused its discretion in declining to impose sanctions. The court noted that the loss of the materials was not intentional and perhaps not even negligent. *Id.* The court also observed that the defense was still able to cross examine vigorously the witness through other materials which were available to defense counsel. *Id.*

Applying the *Finnegan* criteria to the present case, the district court's decision not to impose sanctions on the government was well within its discretion. First, the government's failure was totally inadvertent and not due to any willful attempt to conceal statements from the defense. It is also clear that the government dutifully endeavored to comply with the requirements of 18 U.S.C. § 3500. All other Jencks Act statements of Lasky and the remaining government witnesses were produced for the benefit of defense counsel. Once the government prosecutor was aware of Lasky's New York grand jury testimony, he immediately requested that it be procured for use by defense counsel. Second, the record also demonstrates that no significant injury accrued to Sterling as a result of the nonavailability of the New York grand jury material. The New York transcript is essentially duplicative of other Lasky pretrial testimony which was given to defense counsel. Sterling's defense counsel was able vigorously to cross-examine Lasky using available materials. Moreover, even Sterling concedes that Lasky's testimony was not necessary to prove the charges against the defendant.

Contrary to Sterling's contentions, *United States v. Well*, 572 F.2d 1383 (9th Cir. 1978) does not demand a different result. In *Well*, the district court discovered at trial that all of the government's key witnesses had been interviewed before trial by a government agent. *Id.* at 1384. The government failed to comply with the defendant's Jencks Act request for the tape recordings. *Id.* The trial court declared a mistrial because of the Jencks Act violation. *Id.* On appeal, the government argued that the trial court erred in imposing sanctions under the Jencks Act where the defendant failed to show that he was materially prejudiced by the government's nondisclosure. *Id.* The *Well* court rejected the government's argument, holding that the defendant need not demonstrate prejudice. *Id.*

In its discussion of the requirements under the Jencks Act, the *Well* court stated that "if the government fails to produce [Jencks Act] statements, the court is required to strike the testimony of the witness." *Id.* However, unlike the present case, in *Well* the Jencks Act violation concerned pretrial statements of all three of the government's principal witnesses. In addition, no other essentially duplicative material was made available to defense counsel with which to cross-examine the government witnesses. Considering the substantial nature of the violation in *Well*, it is apparent that the district court would have had no choice but to strike the testimony of the witness or to declare a mistrial. Thus, in light of the general rule enunciated in *Finnegan, Polizzi*, and *Parker* that allows a district judge discretion in normal circumstances to decide whether to impose Jencks Act sanctions; the *Well* language is correctly interpreted as affirming the trial court's decision, under the facts before it, that it had no alternative but to declare a mistrial because of the government's failure to comply with the Jencks Act.

For the reasons stated above, the present fact pattern is analogous to the *Finnegan, Polizzi*, and *Parker* line of cases. We find no abuse of discretion in the trial court's decision not to impose sanctions on the government for the Jencks Act violation.

## III. CONTINUING CRIMINAL ENTERPRISE CONVICTION

Sterling argues there was insufficient evidence to sustain his conviction for violating the Continuing Criminal Enterprise statute, 21 U.S.C. § 848. In order to prove a continuing criminal enterprise, the government must show that (1) the defendant's conduct constituted a felony violation of federal narcotics law (21 U.S.C. § 848(b)(1)); (2) the described conduct occurred as part of a continuing series of violations (21 U.S.C. § 848(b)(2)); (3) the defendant undertook the activity in concert with five or more persons (21 U.S.C. § 848(b)(2)(A)); (4) the defendant acted as the organizer, supervisor or manager of the criminal enterprise (21 U.S.C. § 848(b)(2)(A)) and (5) the defendant obtained substantial income or resources from the purported enterprise. (21 U.S.C.

§ 848(b)(2)(B)).[1] *See United States v. Lurz,* 666 F.2d 69, 75 (4th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982).

Sterling challenges only the sufficiency of the evidence to support the second of the five elements—the continuing series of violations requirement. This circuit has interpreted a "continuing series" as consisting of three or more federal narcotics violations. *United States v. Valenzuela,* 596 F.2d 1361, 1367 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979).

### A.

 The government argues that the fact that three narcotics violations are not specifically listed in the indictment may not necessarily work to invalidate a conviction under Section 848. *See Sperling v. United States,* 692 F.2d 223, 226 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) ("The law requires merely that there be evidence that the defendant committed three substantive offenses—even if not charged in separate indictments—to provide the predicate for a Section 848 conviction"). The government contends that evidence was introduced at trial of Sterling's drug-related activities dating back to 1971 and that the jury could have used evidence of these violations to satisfy the "continuing series of violations" requirement. We agree with the Second Circuit that there is no legal requirement that the violations which make up the continuing series be specifically listed in the indictment.

 Sterling argues that even if it is accepted that the violations which comprise the "continuing series" need not explicitly appear in the indictment, in the present case the district court's instructions limited the jury to considering only those offenses. Sterling misapprehends the instructions given.

As noted above, five elements must be proved beyond a reasonable doubt for a conviction under Section 848. As the Fourth Circuit explained in *United States v. Lurz,* 666 F.2d at 76, "The elements are divided in two parts. First, it is necessary to prove the predicate felony violation (element one), and second, the other elements must be proved."

The trial court instructed the jury that they must find beyond a reasonable doubt, first, that the defendant committed a predicate offense—some or all of the offenses listed in the indictment; and second, "that the offenses listed above were *part* of a continuing series of violations by defendant Sterling of the Federal narcotic laws." (emphasis added). Thus, the instructions stated that the offenses listed in the indictment need only be a *part* of the continuing series of violations, not that *only* offenses listed in the indictment could be considered in determining whether a series of violations had occurred. The government presented more than sufficient evidence from which the jury could find beyond a reasonable doubt that Sterling committed numerous felony violations of the drug laws over a number of years, including those for which he was indicted.

Appellant argues that a Section 846 conspiracy cannot be the predicate violation for a Section 848 offense. Since two of the five potential predicate offenses were conspiracies, appellant contends the Section 848 conviction must be reversed. We need not address this argument since the jury found appellant guilty of each of the five predicate offenses. Since any one of the three substantive counts was sufficient to satisfy the predicate offense requirement

---

1. Section 848(b) states in pertinent part:
 A person is engaged in a continuing criminal enterprise if—
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—
 (A) which are undertaken by such person in concert with five or more other persons with respect to who such person occupies a position of organizer, a supervisory position or any other position of management, and
 (B) from which such person obtains substantial income or resources.

we may disregard the jury's possible consideration of the conspiracy counts. *See United States v. Valenzuela,* 596 F.2d at 1364–65; *United States v. Losada,* 674 F.2d 167, 174 (2d Cir.1982); *United States v. Michel,* 588 F.2d 986, 1000–01 (5th Cir. 1979).

### IV. STERLING'S REMAINING ALLEGATIONS OF TRIAL ERROR

■ (1) Sterling's allegations of prosecutorial misconduct do not require reversal of his convictions. Sterling claims error as to only one isolated matter during the course of a nine-day trial. Even assuming without deciding that the prosecutor's comments during closing argument were error, such error would not require a reversal unless the error resulted in a serious possibility of prejudice to the defendant. *United States v. Jones,* 592 F.2d 1038, 1943 (9th Cir.) *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). On the facts before us, we cannot say that the prosecutor's reference to evidence on a non-essential matter during closing argument resulted in a serious possibility of prejudice to the defendant.

■ (2) The court did not abuse its discretion by limiting defense counsel's cross-examinations of the government witnesses. The cross-examinations were vigorous and sustained, satisfying the demands of the confrontation clause. *See United States v. DeLuca,* 692 F.2d 1277, 1282 (9th Cir.1982).

■ (3) The court did not abuse its discretion in refusing to grant defense counsel access to a government witness' psychiatric records. The district court examined the materials *in camera* and determined that the probative value of the records was substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. *See* Fed.R.Evid. 403. We find that it was not an abuse of discretion for the district court to conclude that the evidence in question was inadmissible under Rule 403.

■ (4) We will not reverse the district court's denial of a continuance absent a clear abuse of discretion. *United States v. Barrett,* 703 F.2d 1076, 1081 (9th Cir. 1983). When a continuance is requested to obtain witnesses, the accused must show who they are, what their testimony will be, that the testimony will be competent and relevant, that the witnesses can probably be obtained if the continuance is granted and that due diligence has been used to obtain their attendance on the day set for trial. *United States v. Hoyos,* 573 F.2d 1111, 1114 (9th Cir.1978). Sterling's offer of proof failed to meet the *Hoyos* requirement. The district court did not abuse its discretion in refusing to grant the continuance.

### V. CONCLUSION

We find that the district court did not abuse its discretion in its decision not to impose sanctions on the government for the Jencks Act violation. We also find that the evidence introduced by the government was sufficient to support Sterling's continuing criminal enterprise conviction. Sterling's remaining allegations of trial error are meritless. Sterling's convictions are AFFIRMED.