991 F.2d 804
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gene Edward CHANDLER, Defendant-Appellant.
 No. 92-50146.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1993.
Decided April 26, 1993.
 
 1
 Before HUG and O'SCANNLAIN, Circuit Judges, and SEDWICK,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 A jury convicted Gene Edward Chandler of being a felon in possession of a hand gun. He appeals his conviction. Appellant's primary concern is that the trial court refused to query the venire for potential prejudice in favor of a police officer's testimony. He also argues that the trial court abused its discretion by preventing him from presenting an exculpatory witness and that the prosecutor engaged in misconduct by failing to properly instruct the officer-witness. For the reasons stated below, we reverse.
 
 
 4
 The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. Defendant filed a timely notice of appeal. Appellant is either no longer in custody or will be released shortly. This case is still vital, however, because the defendant is subject to a period of supervised release.
 
 STATEMENT OF FACTS
 
 5
 The incident leading to the appellant's conviction occurred on February 21, 1991, when police officers were called to an area around 3850 West 102 Street, Inglewood, California. Appellant was with a group of people sitting near gates to public walkways in front of an apartment complex. Upon seeing the police, the appellant and Rodney Jeter ("Jeter") ran through an alley towards the back of the apartment complex.
 
 
 6
 Anticipating this avenue of escape, Officer Freeman, an Inglewood Police Officer, was waiting in the alley. As the fugitives approached, he stepped out and identified himself, telling the men to stop. Officer Freeman recognized appellant, who was running towards him. Appellant and Officer Freeman had met during an arrest of appellant about six years before this incident. The previous meeting stuck in the officer's mind because of appellant's aberrant behavior. Appellant had apparently attempted to intimidate six members of a rival gang by expressing a desire to be the seventh person in their cell.
 
 
 7
 Once Officer Freeman identified himself, Jeter and appellant retreated, heading down a stairway leading to an underground parking lot. Officer Freeman followed and, knowing that other officers were in the parking lot, remained at the top of the stairs. He saw a person, whom he claims to be the appellant, remove an object from his waistband and throw it. The object was later identified to be a .32 caliber revolver.
 
 
 8
 Judge Letts conducted the voir dire. He presented, and explained, a series of fifteen questions to the venire as a whole. He then asked them to individually state whether they answered "yes" to any of the questions. If so, Judge Letts encouraged the individual to give broad responses and, where appropriate, he would follow up with additional specific questions. He asked the venire whether they were related to any law enforcement personnel. "[A]re you or any member of that group[1] now employed or to your knowledge have you or any member of the group ever been employed as a law enforcement officer, or in law enforcement of any kind?" This was the only voir dire question concerning law enforcement personnel that Judge Letts asked.
 
 
 9
 Defense attorney requested that the venire be asked "whether or not they trust law enforcement personnel." Defense counsel had previously included a similar question in its list of fifty-one proposed voir dire questions.[2] Judge Letts denied the request. The charge to the jury did not address the credibility of police officers.
 
 
 10
 Appellant's second ground for appeal is that Ms. Miller ("Miller"), Jeter's girlfriend, mother of his child, and an allegedly crucial witness, did not testify. While keeping her identity secret, appellant had intended to use her testimony from the inception of the case. Miller could not testify when called, however, because her two-month-old child was sick. The court attempted to enable Miller's testimony by issuing a bench warrant, dispatching a marshal to her home, and attempting to secure child care. Despite Judge Letts's efforts, Miller never testified. Judge Letts proceeded with the trial and eventually declared that she was an unavailable witness.
 
 
 11
 Appellant made an offer of proof of Miller's testimony over the telephone. She stated that she had a conversation with Jeter, who had been murdered by the time of trial, while she was visiting him in jail. In the conversation, Jeter told her that he had been carrying the gun and that the police claimed the gun was on appellant in order to establish a parole violation. Specifically, she said, "and when T-bone [Jeter] went to jail--I forget to tell Ms. Meyer [the defense counsel] this--when T-bone went to jail, he told me that he threw the gun, and they put it on Insane [the appellant]; that's Gene."
 
 
 12
 With the exclusion of Miller's testimony and denial of the requested voir dire, appellant based his defense on misidentification. Jeter, not the appellant, had the gun. Officer Freeman made an innocent misidentification. In support, appellant presented testimony of Aaron Cleveland ("Cleveland"), who testified that Jeter was carrying a gun that night.
 
 
 13
 Prior to trial, the court had ruled that the presence of bullets in the gun was irrelevant. Appellant characterizes this ruling as an order to exclude evidence. Appellee states that it was merely an opinion of the court, to which the prosecutor stipulated. While testifying, Officer Freeman referred to the gun as a "fully loaded .32 caliber revolver."
 
 ANALYSIS
 I. The Voir Dire
 
 14
 "A trial court's finding of juror impartiality may be overturned only for manifest error." Mu'Min v. Virginia, 111 S.Ct. 1899, 1904 (1991) (internal quotations omitted); United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir.1979) ("the trial judge should keep uppermost in his mind the fact that the parties have the right to some surface information about the prospective jurors which might form the basis for an informed exercise of peremptory challenges or motions to strike for cause based upon a lack of impartiality"). The trial court has the discretion to reject specific voir dire questions suggested by the parties. United States v. Boise, 916 F.2d 497, 504 (9th Cir.1990) ("as long as it conducts an adequate voir dire its rejection of a defendant's specific question is not error").
 
 
 15
 Whether refusal to ask about personal bias on testimony by law enforcement officers is an abuse of discretion,
 
 
 16
 hinges upon such factors as the importance of the government agent's testimony to the case as a whole; the extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury; the extent to which the credibility of the government agent-witness is put into issue; and the extent to which the testimony of the government agent is corroborated by non-agent witnesses.
 
 
 17
 United States v. Baldwin, 607 F.2d at 1298. When the trial court abuses its discretion and voir dire is not sufficient to ensure an impartial jury, the conviction should be reversed, not remanded. United States v. Washington, 819 F.2d 221, 224 (9th Cir.1987).
 
 
 18
 Previous cases provide clear examples of the application of these rules. In Baldwin, the trial court refused to ask two questions: whether the venire knew the prosecution's witness; and whether they would be unduly swayed by the testimony of a law enforcement officer. The prosecution's case relied primarily on the testimony of two agriculture agents. This court reversed the conviction because the voir dire was inadequate. This court affirmed a conviction in United States v. Powell, 932 F.2d 1337 (9th Cir.1991). There, the defendant was convicted of possessing cocaine with intent to distribute. On voir dire, the court refused to ask whether the venire would be influenced by the testimony of a law enforcement officer. As the case included corroborating evidence of drug related items and congruent testimony from other witnesses, this court affirmed the conviction.
 
 
 19
 Appellee argues that voir dire was proper because, in his closing argument, appellant challenged Officer Freeman's perception, not his honesty. Voir dire on the credibility of an officer's testimony was, therefore, not needed. Appellant, however, was planning to use Ms. Miller's testimony that the misidentification was intentional and dishonest. Thus, at the time of voir dire, appellant was concerned with the venire's opinion of testimony by police officers. Denial of the requested voir dire affected appellant's defense, which, with the exclusion of Ms. Miller's testimony, became exclusively one of a mistaken unbiased officer. In a real sense, the exclusion of this single voir dire question affected the course of trial. As in Baldwin, appellant's opportunity to exercise "peremptory challenges or motions to strike for cause based upon a lack of impartiality" was limited by the lack of information concerning the weight the venire put on the testimony of law enforcement officers. United States v. Baldwin, 607 F.2d at 1297. Powell is distinguished because it involved a case where the officer's testimony was supported by extensive corroborating evidence. Here, the case turned entirely upon the testimony of Officer Freeman.
 
 
 20
 Judge Letts apparently desired to keep voir dire clear and efficient: an important goal to obtain coherent responses from the venire and to avoid undue burden on the court. Where, however, a question was as crucial to the outcome of the case as this one, it was an abuse of discretion to refuse to ask it. United States v. Baldwin, 607 F.2d at 1298 ("The few minutes which would be consumed ... is outweighed by the importance of the question to the intelligent exercise of preemptory challenges by both parties.") Appellant is entitled to a new trial.
 
 II. The Absence of Miller's Testimony
 
 21
 The court will review a district court decision to grant or deny a continuance for abuse of discretion. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1051 (9th Cir.1990).
 
 
 22
 When a continuance is requested to obtain witnesses, the accused must show who they are, what their testimony will be, that the testimony will be competent and relevant, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance on the day set for trial.
 
 
 23
 United States v. Sterling, 742 F.2d 521, 527 (9th Cir.1984). The essence of appellee's argument is that because the witness's identity was kept secret, appellant had the burden of providing child care. Failing to so provide meant that appellant did not use due diligence to obtain Miller's attendance.
 
 
 24
 Appellant's argument is flawed. Miller's child was sick, which was equally unforeseeable to appellant, appellee, and the court. The child's illness was unfortunate and perhaps frustrating. The party's frustration, however, does not mean that appellant lacked diligence in producing the witness. This is not the case where the defendant asks for more time to catch up on an unread file. See United States v. Gonzalez-Sandoval, 894 F.2d 1052. Nor is this a case where the court did not know the content of the sought after witness' testimony. See United States v. Hoyos, 573 F.2d 1111, 1114 (9th Cir.1978). Here, the appellant had a witness, who was willing to testify, but had a sick two-month-old child. Appellant should not be barred from seeking reversal on the ground that he was not diligent in obtaining Miller's attendance.
 
 
 25
 We must next address the question of whether Miller's testimony would have been inadmissible hearsay, making its absence not prejudicial. United States v. Gonzalez-Sandoval, 894 F.2d at 1051. Appellant argues that the testimony would have been admissible under the hearsay exception for statements against the penal interests of the declarant. See Fed.R.Evid. 804(b)(3) ("Rule 804(b)(3)"). Appellee responds, and the district court seems to have agreed, that Jeter's statement was not against his penal interest because (1) he was speaking to his lover and was, therefore, in no danger of prosecution, and (2) the reliability of Jeter's statement was diminished because it was not spontaneous with the incident. Appellant argues that the circumstances of the statement, made while visiting a jail, support its reliability because Jeter could have easily been overheard.
 
 
 26
 The court reviews the district court's determination of admissibility under Rule 804(b)(3) for abuse of discretion. United States v. Hoyos, 573 F.2d 1111, 1115 (9th Cir.1978). "The test for admissibility is two-pronged: (1) whether the statement so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true, and (2) whether the corroborating circumstances clearly indicate the trustworthiness of the statement. Id.
 
 
 27
 There was no, or very little, corroborating evidence of Jeter's statement. Appellant offers Cleveland's statement that he saw that Jeter was carrying a gun on the night in question. Although this is consistent with Jeter's statement, it is not indicative of "corroborating circumstance[s] clearly indicat[ing] the trustworthiness of the statements." Rule 804(b)(3). In addition, Jeter's statement was not spontaneous with the appellant's arrest. See United States v. Oropeza, 564 F.2d 316, 325 (9th Cir.1977) ("statement here was not spontaneous, but was given after the declarant had been arrested and jailed"). It was not an abuse of discretion for the trial court to conclude that Miller's statement would not have been admitted. Appellant was, therefore, not prejudiced by the absence of her testimony.
 
 
 28
 III. Officer Freeman's Statements that the Gun was Loaded
 
 
 29
 Appellant argues that Officer Freeman's testimony on the gun amounted to prosecutorial misconduct because it violated a court order prohibiting the introduction of evidence that the gun was loaded. Appellee responds that the pretrial "order" was really an informal opinion that the presence of bullets in the gun was irrelevant.
 
 
 30
 Appellee is correct; Judge Letts never actually ordered that the bullets be excluded. The transcript states:
 
 
 31
 THE COURT: Was the gun fired?
 
 
 32
 MR. WILEY: Pardon me, Your Honor?
 
 
 33
 THE COURT: Was it a fully loaded gun?
 
 
 34
 MR. WILEY: Fully loaded, six cylinders, Your Honor.
 
 
 35
 THE COURT: To what are the bullets relevant?
 
 
 36
 MR. WILEY: Possession of ammunition is, I believe, defined in the statute--
 
 
 37
 THE COURT: But you haven't charged it.
 
 
 38
 MR. WILEY: But he is in possession of a--well, we haven't charged the bullets, that's correct, Your Honor.
 
 
 39
 THE COURT: And there's no dispute that the gun without the bullets is a firearm, is there?
 
 
 40
 no, there isn't, the gun itself--
 
 
 41
 MR. WILEY: Well, the government has to show that it was a firearm that's operable--
 
 
 42
 THE COURT: But not--
 
 
 43
 MR. WILEY: But we can show that without the bullets.
 
 THE COURT: Yes
 
 44
 It doesn't have to be loaded. You can find a fellow with an unloaded gun and he still violates the statute.
 
 
 45
 Judge Letts, while apparently believing the evidence to be irrelevant, did not rule that it was inadmissible.
 
 
 46
 Furthermore, appellant was not prejudiced by the testimony. The issue was whether appellant had the gun or not. The bullets were irrelevant, and, because appellant was seen throwing the gun away, not firing it, they were not inflammatory. "The reason I ruled it was irrelevant, and only that, just irrelevant, because it's a firearm without it, so we have some irrelevant testimony in the case."
 
 
 47
 For the reasons stated above, the case is reversed and remanded for a new trial.
 
 
 48
 HUG, Circuit Judge, dissenting.
 
 
 49
 I respectfully dissent from Part I of the majority opinion finding reversible error, but I concur in Parts II and III, which find no reversible error.
 
 
 50
 With respect to Part I, concerning the voir dire examination, I conclude there was no abuse of discretion within the standard of United States v. Baldwin, 607 F.2d 1295, 1298 (9th Cir.1979). The district judge conducted an extensive, fair, and searching voir dire. His decision not to ask the jury "whether or not they trust law enforcement personnel" was not an abuse of discretion. This was not a trial that involved a question of possible police bias. The central question was the accuracy of the officer's perception of which of the two young men had dropped the gun. The defense tactics at trial made it very plain that the defense did not attribute any bias or ulterior motive to the policy officer, but simply that his observation was inaccurate.
 
 
 51
 An additional factor, in my opinion, is the fact that there was no direct conflict between the witnesses. The other witness called by the defense merely indicated that he observed the companion, Jeter, had a gun. However, he did not indicate that Chandler did not have a gun; rather, he indicated he did not know if Chandler had a gun.
 
 
 52
 With these things in mind and with the extent of the other questions that were asked, some 95 pages of transcript on voir dire, and the significant latitude that was given to the attorneys for follow-up questions, I would not find this to be an abuse of discretion justifying reversal.
 
 
 
 *
 The Honorable John W. Sedwick, United States District Judge, for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Judge Letts described the group to which he refers as:
 the group consists of these people, anybody who you live with, any member of your immediate family, any other family member that you see enough and talk with enough that he remains an integral part.... [T]he people that are in the group are the people whose opinions or matters that are important to you, you tend to solicit and find out what they think.
 
 
 [2]
 Under the heading "CREDIBILITY OF LAW ENFORCEMENT OFFICERS," the appellant proposed the following three questions:
 
 
 [46]
 Do you believe it is impossible for a law enforcement officer to make a mistake?
 
 
 [47]
 Do you believe it is possible for a law enforcement officer to lie?
 
 
 [48]
 If a law enforcement officer were to testify in this case, would any of you be inclined to think that his/her testimony was more believable than that of any other witness just because of the fact that he/she is a law enforcement officer?