**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles HOLMES, aka Slim,**
**Defendant–Appellant.**

**No. 99–10427.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 2000

Filed Oct. 10, 2000

Kenneth D. Noel, San Francisco, California, for the defendant-appellant.

Miranda Kane, Office of the United States Attorney, San Francisco, California, for the plaintiff-appellee.

Before: THOMPSON, T. G. NELSON, and SILVERMAN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Charles Holmes appeals his conviction for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). Holmes contends that the district court erred by refusing his request for an informant credibility jury instruction, by allowing a lay witness to identify him from bank surveillance camera photographs, and by denying his motion for a new trial. Holmes also argues that he was denied due process when the government failed to disclose impeachment evidence and that he was denied effective assistance of counsel. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## BACKGROUND

On February 27, 1998, a man and a woman entered a Bank of America branch in San Francisco, California with handguns drawn. The bank's assistant manager, Leticia Linares, activated the alarm and surveillance cameras before the male robber ordered her to raise her hands. The woman robber jumped over the counter and took money from four teller stations. The robbers departed before the police arrived.

Following the robbery, Linares identified the defendant, Charles Holmes, from a photographic lineup. Stacy Bennett, a teller at the bank, also witnessed the robbery. She testified she was able to view the male robber for approximately two seconds before being ordered to lie down on the floor. Following the robbery, Bennett identified Holmes as the robber from a photographic lineup and also identified Holmes in court. A customer sitting in a car outside of the bank at the time of the robbery was unable to identify Holmes in court, but remembered the robbers getting into a black Caprice getaway car. The bank's security guard, as well as several other bank employees working on the day of the robbery, failed to pick out Holmes in a photographic lineup.

In addition to testimony from bank employees, the government introduced surveillance camera photographs of the robbers from different angles and distances. The surveillance photographs showed the male robber holding a gun, and wearing a dark-colored knit cap and a long dark-colored jacket. The male robber had a moustache and a goatee. A cap covered most of the male robber's hair, but long strands were visible coming out from underneath the back of the male robber's knit cap. Although the male robber's face was not covered during the robbery, none of the surveillance photographs showed him looking directly into the camera: in one photograph, the robber's eyes are cast downward, and in another, his facial features appear in profile and are somewhat blurred.

At trial, the government called Tina Johnson as a witness. Johnson testified that, prior to the robbery, she met Holmes on approximately six occasions through her husband. She said she first approached the police with information about the robbery approximately six weeks after the robbery, "ask[ing] them about the possibility of getting money in exchange for the information." The police responded that they did not have reward money to give, but the Federal Bureau of Investigation might. At a subsequent meeting with a police detective and an FBI agent, Johnson identified Holmes as the male robber in the bank surveillance photographs. Johnson testified that, at the time she provided the information, she did not know "one way or the other" if she would receive any compensation for her information. However, after the meeting, Johnson received $1,500 from the FBI. The FBI then formally placed Johnson in the FBI's "informant program." Following her grand jury testimony, Johnson received an additional $4,500 from the FBI to help her relocate away from her husband. In total, Johnson received $6,000 from the FBI for the information she provided about Holmes's involvement in the bank robbery.

Johnson testified that on the day of the robbery, she discovered Holmes standing beside her mother's house, which is located several blocks from the bank, acting "strange." He seemed to be looking for someone because he was moving his head back and forth. Holmes asked Johnson to walk with him across the front yard to a truck. Holmes then laid down in the cab of the truck behind the driver's seat and left with a female driver. Johnson later noticed that her husband's black Caprice was partially covered with bed covers in the garage, something Johnson found unusual. Johnson testified that Holmes was the male robber depicted in the bank surveillance photographs and that she recognized the robber's clothes. She also identified as her husband's, a coat worn by the robber.

The jury returned a guilty verdict. Holmes then filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on new impeachment evidence regarding Johnson. In addition to the motion, Holmes, now represented by new counsel, submitted the declaration of a defense investigator stating that, during a conversation with the investigator, Johnson admitted that she had a prior felony conviction for forgery, three prior juvenile adjudications for arson, forgery and battery, and had undergone psychiatric treatment. Johnson also admitted to a history of alcohol and crack cocaine addiction, and told the investigator that she may have been intoxicated when she testified at the trial. Holmes's new counsel also submitted a reporter's transcript of the preliminary hearing in the 1994 prosecution of Raymond Taylor, Johnson's husband, for assault with a deadly weapon, false imprisonment, and torture based on Johnson's complaint. At this 1994 preliminary hearing, Johnson recanted her allegations against her husband and implicated others in the attack. Johnson apparently falsely implicated her husband because he had been unfaithful to her. A police officer also testified at the 1994 preliminary hearing that in 1994 Johnson had received housing assistance from the FBI.

The district court denied the new trial motion, concluding that, even if the government had failed to disclose any of the impeachment evidence set forth in support of the motion, there was not a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See United States v. Walgren*, 885 F.2d 1417, 1427–28 (9th Cir.1989); *see also United States v. Davis*, 960 F.2d 820, 825 (9th Cir.1992).

## INFORMANT CREDIBILITY JURY INSTRUCTION

■ Holmes first contends that the district court erred by refusing to give the jury Ninth Circuit Model Criminal Jury Instruction 4.10.1, which is titled "Testimony of Informer." This instruction states:

> You have heard testimony that _____, a witness, has received [benefits, compensation, favored treatment, etc.] from the government in connection with this case. You should examine _____'s testimony with greater caution than that of ordinary witnesses. In evaluating that testimony, you should consider the extent to which it may have been influenced by the receipt of [e.g., benefits] from the government.[1]

Holmes argues the instruction was necessary to inform the jury that Johnson's testimony should be examined with greater caution than the testimony of an ordinary witness because Johnson may have been motivated to implicate Holmes in the armed robbery by financial gain, not simply by a civic duty to report a crime.

1. Ninth Circuit Model Criminal Jury Instruction 4.10.1 was last revised in February, 2000. The instruction is currently numbered as 4.10 and is titled "Testimony of Witness Receiving Benefits." Ninth Circuit Model Jury Instructions—Criminal (West 2000). The language of the jury instruction remains the same.

The district court refused to give the requested instruction on the ground that there was no evidence that Johnson received payment in return for testimony against Holmes.[2] According to the district court, "the focus [of the requested jury instruction] is *testimony* in exchange for benefits of compensation [and] that is not the situation that we have here." (Emphasis added.)

■ We review for abuse of discretion the district court's refusal to give the informant credibility instruction. *See United States v. Vgeri,* 51 F.3d 876, 881 (9th Cir.1995). "Our inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations." *Territory of Guam v. McGravey,* 14 F.3d 1344, 1346 (9th Cir.1994) *(quoting United States v. Joetzki,* 952 F.2d 1090, 1095 (9th Cir.1991)).

■ Although the district court correctly determined that Johnson was not provided with any benefits in exchange for her testimony, the requested jury instruction's application is not limited to those witnesses who receive benefits in return for testimony. The instruction includes in its definition of an informant one who receives benefits in return for *information.* The Ninth Circuit comment to the instruction explains: "The defendant is entitled to this instruction when the witness has gathered information 'in an undercover capacity for the government' or has been paid, given promises or advantageous treatment, or has received other benefits for the information." Ninth Circuit Model Jury Instructions—Criminal, § 4.10 (West 2000).

■ Our case law supports the proposition that the requested jury instruction's definition of "informant" includes not only those who receive benefits for providing testimony, but also those who receive benefits for providing information. In *United States v. Bernard,* 625 F.2d 854, 857 (9th Cir.1980), for example, a witness in a drug

prosecution conceded that he had received money from the Drug Enforcement Administration for providing information concerning the defendant's manufacture of methamphetamine. In concluding that the witness was an informant within the meaning of a similar informant credibility jury instruction, we stated:

> Ordinarily we consider that a person is an informer if he is attempting to gather evidence or information in an undercover capacity for the government. However, although [the witness] does not fit this description, he was paid by the government for information that he gave after the events in question had occurred. We think that, at least for the purpose of the informant instruction, he was an informant.

*Id.* at 858 n. 3 (citations omitted).

In *United States v. Hoyos,* 573 F.2d 1111 (9th Cir.1978), we stated: "To be an informer the individual supplying the information generally is either paid for his services, or, having been a participant in the unlawful transaction, is granted immunity in exchange for his testimony." *Id.* at 1116 (quoting *United States v. Miller,* 499 F.2d 736, 742 (10th Cir.1974)). In concluding that the district court did not err by refusing to provide the jury with an informant credibility instruction, we determined that the witness was not an informant because his remuneration was not tied to "the sale of specific information." *Id.*

The concern expressed in the jury instruction Holmes requested and in our case law is that a citizen who receives compensation in exchange for information may have been motivated to come forward by personal gain and not "some independent law enforcement purpose." *Territory of Guam v. Dela Rosa,* 644 F.2d 1257, 1259–60 (9th Cir.1980) (per curiam). This concern is present even where, as here, the witness had been paid in full before

**2.** Johnson testified in a pretrial hearing that the compensation she received from the FBI was not "related in any way to testimony [she] might provide in this case."

trial and was not promised any compensation for testifying. *Cf. United States v. Cook,* 102 F.3d 249, 252 (7th Cir.1996). Notwithstanding, or perhaps because of, the earlier payment to Johnson, she may well have been expecting further payment after her trial testimony. She had, after all, received additional payment following her testimony before the grand jury. Moreover, even if Johnson expected no additional payment for her trial testimony, the temptation existed for her to testify falsely in order to justify the earlier payments to her, and to leave open the possibility of future cooperation for hire as a participant in the FBI informant program.[3]

■ Even though Johnson was an informant within the meaning of the requested jury instruction, we conclude that the district court did not abuse its discretion by refusing to give the jury that particular instruction. The district court provided another instruction which informed the jury that it was appropriate to consider the extent to which a witness's testimony may have been influenced by the receipt of benefits from the government. This instruction provided in relevant part:

> In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of a witness, you may take into account: (1) the opportunity and ability of the witness to see or hear or know the things testified to; (2) the witness' memory; (3) the witness' manner while testifying; (4) the witness' interest in the outcome of the case and any bias, prejudice, *and whether the witness received money or benefits from the Government in connection with the case;* (5) whether other evidence contradicted the witness' testimony; (6) the reasonableness of the witness' testimony in light of all the evidence; and (7) any other factors that bear on believability. (Emphasis added.)

Although this instruction did not expressly inform the jury that the testimony of a paid informant witness should be examined with greater caution than that of an ordinary witness, it did advise the jury in a clear fashion to scrutinize the credibility of a witness who had received money or benefits from the government. *See United States v. Williams,* 59 F.3d 1180, 1184 (11th Cir.1995) (stating that sole function of an informant instruction is to make jury aware that confidential informant's testimony is to be viewed with caution). We approved a similar approach to instructing a jury in *United States v. Hoyos,* 573 F.2d 1111 (9th Cir.1978). We stated:

> Moreover, even if Jimenez did have attributes similar to the traditional "informer," we can find no prejudice resulting from the trial court's failure to give the requested special instruction. First, defense counsel was allowed extensive cross-examination. Any bias or prejudice entertained by Jimenez could have been presented to the jury for consideration, as it, in fact, was. *Second, the trial court did give a general instruction relating to the credibility of witnesses, an instruction which admonished the jurors to examine "whether the witness had any motive for not telling the truth" and "whether the witness has any interest in the outcome of this case." In the circumstances of this case, any conceivable prejudice to Hoyos was thereby eliminated.*

*Id.* at 1116 (emphasis added); *see also United States v. Vgeri,* 51 F.3d 876, 881 (9th Cir.1995) (same).

We also note that the Ninth Circuit comment to the specific informant credibility instruction requested by Holmes suggests an approach to instructing the jury similar to the one adopted by the district

---

**3.** An FBI agent testified in a pretrial hearing that he placed Johnson in the FBI informant program in part because "[i]f she was going to help me again, it would be a lot easier."

court: "Where there are several reasons for discounting the credibility of a witness, they may be combined in a single cautionary instruction concerning credibility." Ninth Circuit Jury Instructions—Criminal, § 4.10 (West 2000) (citing *United States v. Bernard,* 625 F.2d 854, 858–59 (9th Cir. 1980)).

■ In addition to the foregoing, a specific jury instruction on the credibility of an informant is required only when the informant's testimony "is 'important' to the case, i.e., it supplies the only strong evidence of guilt." *United States v. Patterson,* 648 F.2d 625, 631 (9th Cir.1981) (quoting *Territory of Guam v. Dela Rosa,* 644 F.2d 1257, 1260 (9th Cir.1980) (per curiam)); *see also United States v. Bosch,* 914 F.2d 1239, 1247 (9th Cir.1990) (stating that an informant instruction must be given only when requested by defense counsel and where the testimony of an informant is "substantially uncorroborated"); *United States v. Martin,* 489 F.2d 674, 677 n. 2 (9th Cir.1973) (same).

Here, Johnson's testimony did not supply "the only strong evidence of guilt." *Patterson,* 648 F.2d at 631. At trial, the assistant bank manager positively identified Holmes as the male bank robber. She also identified Holmes prior to trial from a photographic lineup. A teller who was working behind the counter at the time of the robbery also positively identified Holmes in court as the man who committed the robbery. That teller also identified Holmes from a photographic lineup prior to trial. The jury members also had the opportunity to view the bank's surveillance photographs and determine for themselves whether the photographs depicted the defendant.

Finally, Johnson testified extensively about the amounts she received and the circumstances surrounding her compensation. Thus, the jury's attention was drawn to the fact that Johnson was a paid informant and that she might be motivated to testify falsely against Holmes.

In light of the general witness credibility instruction given by the district court, the circumstance that Johnson's testimony was not the "only strong evidence of guilt," and the fact that the jury heard extensive evidence of the benefits Johnson received from the government, we conclude the district court did not abuse its discretion by refusing to give the jury Ninth Circuit Model Criminal Jury Instruction 4.10.1.

## LAY OPINION TESTIMONY

■ Holmes next contends that the district court erred by allowing Johnson to identify him from surveillance photographs taken during the bank robbery because Johnson's previous contacts with him were too limited to serve as an adequate foundation for her lay opinion.

■ We review for abuse of discretion a district court's admission of lay opinion testimony. *See United States v. Von-Willie,* 59 F.3d 922, 929 (9th Cir.1995). A lay witness is not required to have "both sustained contact and special knowledge" of a defendant in order to give identification testimony. *See United States v. Henderson,* 68 F.3d 323, 326 (9th Cir. 1995). A lay witness need only "have sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." *Id.* Moreover, "[w]hile lay witness identifications are particularly valuable when the witness has specialized knowledge of the defendant's appearance unavailable to the jury, such knowledge is not a prerequisite to the admission of the testimony." *Id.* (internal citation omitted).

■ Johnson testified that she met Holmes on at least six occasions before identifying him from the surveillance photographs. According to Johnson, each of these meetings lasted at least 30 minutes, and in one instance Holmes spent the night at Johnson's mother's house while Johnson was there. The district court reasonably determined that these contacts provided Johnson with sufficient opportu-

nity to observe the defendant's physical appearance. *See United States v. Butcher,* 557 F.2d 666, 667 n. 3 (9th Cir.1977) (concluding that there was no reversible error where witness who had known the defendant for one-and-a-half years and been with him about three times for a total of two-and-a-half hours testified as a lay witness to identify the defendant from surveillance photographs). The district court also reasonably concluded that, due to the lack of clarity of the surveillance photographs and the fact that none of the photographs showed a full frontal view of the defendant's face, Johnson's testimony would aid the jury. In sum, the district court did not abuse its discretion by allowing Johnson to identify Holmes as the robber depicted in the bank surveillance photographs; Johnson's testimony was rationally based on her perceptions and was helpful to the determination of a material fact in issue. *See* Fed.R.Evid. 701.

## MOTION FOR NEW TRIAL

Holmes next argues that the district erred by denying his motion for a new trial based on newly-discovered impeachment evidence concerning Johnson's criminal record, drug use, and history of initiating false charges against her husband in another proceeding. We review for abuse of discretion a denial of a motion for new trial. *See United States v. Sarno,* 73 F.3d 1470, 1507 (9th Cir.1995).

Even accepting Holmes's argument that the government failed to disclose impeachment evidence favorable to the defense, we agree with the district court that there is not a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different. *See United States v. Walgren,* 885 F.2d 1417, 1427–28 (9th Cir.1989); *see also United States v. Kulczyk,* 931 F.2d 542, 549 (9th Cir.1991)

("[E]vidence that would merely impeach a witness cannot support a motion for a new trial" on the basis of newly-discovered evidence).

Johnson's identification of Holmes as the male robber depicted in the surveillance photographs merely corroborated the testimony of the assistant bank manager and teller who witnessed the robbery and identified the defendant as the robber both in court and from a photographic lineup. The jury also examined the surveillance photographs that were admitted into evidence and were able to compare them to the defendant's appearance in court and to his appearance in other photographs taken of him closer to the time of the robbery. Similarly, Johnson's testimony that she observed the defendant near the bank on the day of the robbery, while incriminating, was not pivotal to the government's case and was merely corroborative of other trial testimony describing the getaway vehicle and the time and date of the robbery.[4]

## INEFFECTIVE ASSISTANCE OF COUNSEL

Holmes's final contention is that he was denied his Sixth Amendment right to effective assistance of counsel when his trial counsel failed to interview Johnson prior to trial or inquire about potential impeachment evidence. Although claims of ineffective assistance of counsel are ordinarily more appropriately addressed in a habeas corpus proceeding, the record here has been sufficiently developed for us to resolve Holmes's claim, to the extent that claim is based on the failure of his trial counsel to uncover impeachment evidence about Johnson which would have undermined her testimony. As we have stated in ruling on the district court's denial of Holmes's motion for a new trial, even if

4. In light of our conclusion that Holmes failed to show that there is a reasonable probability that, had the impeachment evidence been timely disclosed to the defense, the result of the proceeding would have been different, Holmes's argument, raised for the first time on appeal, that the government failed to disclose material impeachment evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), also fails. *See United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

the impeachment evidence had been presented to the jury, there is no reasonable probability that the outcome of the trial would have been different. Thus, even assuming Holmes has shown, or in a separate habeas proceeding could show, that his trial counsel's performance was deficient under *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Holmes did not suffer prejudice as a result.

AFFIRMED.