**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

TIMOTHY RUSSELL JOHNSON,
            *Defendant-Appellant.*

No. 11-10290

D.C. No.
2:10-cr-00379-
SRB-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted
April 16, 2012—San Francisco, California

Filed May 29, 2012

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Thomas M. Hoidal, Law Office of Thomas M. Hoidal, P.L.C., Phoenix, Arizona, for the defendant-appellant.

Tracy Van Buskirk, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

---

**OPINION**

GRABER, Circuit Judge:

Defendant Timothy Russell Johnson appeals his jury conviction on two counts of making a false statement with respect to information required to be kept by a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In a series of transactions, Defendant bought firearms and, almost immediately, delivered those firearms to Miguel Pedroza. Defendant did not possess a license to manufacture or deal in firearms.

On September 28, 2006, Defendant went to a store named "Shooters Supply Company," which was a federally licensed firearms dealer. There, Defendant arranged to purchase 25 Polish AK-47 rifles. As part of the transaction, Defendant filled out ATF[1] Form 4473. Question 11.a on Form 4473 reads:

> Are you the actual buyer of the firearm(s) listed on this form? **Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.** *(See Important Notice 1 for actual buyer definition and examples.)*

---

[1]"ATF" means the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Important Notice 1 states:

> **Actual Buyer:** For the purposes of this form, you are the actual buyer if you are purchasing the firearm for yourself or otherwise acquiring the firearm for yourself *(for example, redeeming the firearm from pawn/retrieving it from consignment, firearm raffle winner)*. You are also the actual buyer if you are legitimately acquiring the firearm as a gift for a third party. **ACTUAL BUYER EXAMPLES**: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones money for the firearm. Mr. Jones is NOT the actual buyer of the firearm and must answer "no" to question 11.a. The licensee may not transfer the firearm to Mr. Jones. However, if Mr. Brown goes to buy a firearm with his own money to give to Mr. Black as a present, Mr. Brown is the actual buyer of the firearm and should answer "yes" to question 11.a. Please note, if you are picking up a repaired firearm for another person, you should answer "n/a" to question 11.a.

Defendant answered "yes" to Question 11.a, declaring that he was the "actual buyer" of the firearms as defined on the form. Defendant then left Shooters Supply with the rifles and promptly delivered them to Pedroza, who gave him $4,500 as a partial payment.

On October 6, 2006, Defendant returned to Shooters Supply. He completed another Form 4473, again declaring himself to be the "actual buyer," for the purchase of 34 firearms: 14 Polish AK-47 rifles and 20 Yugoslavian AK-47 rifles. Not all of the rifles were ready immediately, so Defendant arranged to pick them up at a gun show in Mesa, Arizona.

The next day, Defendant went to the gun show in Mesa. He walked almost directly to the Shooters Supply table and left pushing a cart stacked with seven cardboard boxes containing

two rifles each. He put the boxes into his truck, which already contained several similar boxes. Defendant then drove directly from the gun show to the parking lot of a grocery store, where he met Pedroza. They transferred the firearms from Defendant's truck to Pedroza's truck. Defendant and Pedroza spoke for a few minutes, and Pedroza gave Defendant another $4,500. Pedroza departed with the firearms, returned home, and transferred the boxes to a gold minivan. He left, driving the minivan, and, at the direction of the ATF, was apprehended by Phoenix Police. Police found 59 firearms in Pedroza's vehicle, which matched the firearms listed on the two Form 4473s that Defendant had completed on September 28 and October 6.

Pedroza agreed to cooperate with the ATF. As part of that assistance, Pedroza recorded conversations with Defendant. Pedroza also paid Defendant the remaining money that he owed for the firearms, using cash provided by an ATF agent.

Thereafter, ATF agents executed search warrants at Defendant's home, business, and vehicle. Defendant agreed to speak with the agents. When asked about the firearms, Defendant admitted that he "got hooked up with a guy that, that's been buying them." He identified that "guy" as Miguel Pedroza. Defendant said that he had sold firearms to Pedroza several times and that he would "hold those weapons for 5-6 hours, sometimes 12 hours, overnight, and then, then [he'd] deliver them." Defendant stated that he never opened the boxes that he had acquired at the Mesa gun show before delivering them to Pedroza.

The government indicted Defendant on two counts of knowingly making a false statement with respect to information required under federal law to be kept in the records of Shooters Supply Company, in violation of 18 U.S.C. § 924(a)(1)(A).[2] The first count stemmed from Defendant's

---

[2]Pedroza was indicted for aiding and abetting Defendant's false statements. He pleaded guilty.

September 28, 2006 representation on Form 4473 that he was the actual buyer of the firearms, and the second count related to the similar representation made on the Form 4473 that Defendant completed on October 6, 2006.

A jury convicted Defendant on both counts, and the district court imposed a sentence of 30 months' imprisonment. Defendant timely appeals.

## DISCUSSION

A.  *The district court correctly instructed the jury on the elements of the offense.*

   1.  *Section 924(a)(1)(A) does not require the government to prove that the falsehood related to the lawfulness of the sale.*

Defendant first argues that we should read § 924(a)(1)(A) to contain an element requiring the government to show that the falsehood pertains to the lawfulness of the sale to the ultimate recipient. We review de novo questions of statutory interpretation. *United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012) (en banc).

Relying on case law addressing convictions under 18 U.S.C. § 922(a)(6), Defendant argues that the government was required, under the "straw man doctrine,"[3] to prove that the actual purchaser, Pedroza, was ineligible to buy firearms. Only then, Defendant reasons, would his false claims to be the actual buyer of the firearms be "material" to the lawfulness of the sales.

---

[3]This doctrine provides that "a person violates section 922(a)(6) by acting as an intermediary or agent of someone who is ineligible to obtain a firearm from a licensed dealer and making a false statement that enables the ineligible principal to obtain a firearm." *United States v. Moore*, 109 F.3d 1456, 1460-61 (9th Cir. 1997) (en banc).

**[1]** Section 922(a)(6), on which Defendant relies by analogy, and § 924(a)(1)(A) describe separate statutory offenses. *United States v. Buck*, 548 F.2d 871, 876-77 (9th Cir. 1977). Section 924(a)(1)(A) establishes a criminal penalty for anyone who "knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter." Section 922(a)(6), by contrast, makes it unlawful

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector *with respect to any fact material to the lawfulness of the sale* or other disposition of such firearm or ammunition under the provisions of this chapter[.]

(Emphasis added.) Section 922(a)(6) contains an explicit materiality requirement; § 924(a)(1)(A) does not. Instead, § 924(a)(1)(A) requires only that false statements be made with respect to information *that is required to be kept* by federally licensed firearms dealers.

**[2]** "Statutory interpretation begins with the plain language of the statute." *United States v. Rosales*, 516 F.3d 749, 758 (9th Cir. 2008) (internal quotation marks and alteration omitted). "If the plain meaning of the statute is unambiguous, that meaning is controlling . . . ." *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011), *cert. denied*, 2012 WL 896252 (U.S. Apr. 16, 2012) (No. 11-9339). Here, the text of § 924(a)(1)(A) unambiguously describes which false statements and representations it prohibits—simply those that are made with respect to information that is required to be kept by federally licensed firearms dealers.

Furthermore, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 130 S. Ct. 827, 838 (2010) (internal quotation marks and alteration omitted). Thus, under ordinary rules of statutory construction, we presume that Congress acted intentionally when it chose to include the word "material" in § 922(a)(6) but to omit it from § 924(a)(1)(A), which is part of the same Act. We should give meaning to that difference in congressional intent.

**[3]** Our sister circuits are in accord. In *United States v. Sullivan*, 459 F.2d 993, 994 (8th Cir. 1972) (per curiam), the Eighth Circuit held:

> Appellant contends that an element of materiality should be read into the language concerning false statements made for the dealer's records. We disagree. While a violation of 18 U.S.C.A. § 922(a)(6) expressly requires a showing of materiality no such expression is found in § 924(a). Section 924(a) is in no way ambiguous and appellant fails to convince us that § 924(a) suffers any constitutional infirmity by not requiring an element of materiality.

Other circuits, although they have not explored the issue in great detail, agree that the government need not prove that the falsehood related to the lawfulness of the sale in order to obtain a conviction under § 924(a)(1)(A). *See, e.g.*, *United States v. Prince*, 647 F.3d 1257, 1266 (10th Cir.) (affirming a conviction under § 924(a)(1)(A) for providing a false address on an ATF form and approving jury instructions that required the government to prove only that "the defendant made a false statement or representation in the firearm records that the licensed firearms dealer was required by federal law to maintain"), *cert. denied*, 132 S. Ct. 860 (2011); *United States v. Howell*, 37 F.3d 1197, 1202 (7th Cir. 1994) (distin-

guishing § 922(a)(6), which requires the government to prove that the statement was likely to deceive the dealer as to the lawfulness of the sale, from § 924(a)(1)(A), which merely requires that "the government must prove that the defendant knowingly made a false statement with respect to information that the law requires a federally licensed firearms dealer to keep").

Nonetheless, Defendant argues that, under *Neder v. United States*, 527 U.S. 1 (1999), we must look to common law if Congress has used terms "that have accumulated settled meaning under . . . the common law." *Id.* at 21 (internal quotation marks omitted). Section 924(a)(1)(A) prohibits "knowingly mak[ing] any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter." Defendant claims that, at common law, the word "representation" implies a materiality element. He therefore argues that, because § 924(a)(1)(A) criminalizes "false statement[s] or *representation[s]*," only falsehoods that relate to the lawfulness of the sale are prohibited. 18 U.S.C. § 924(a)(1)(A) (emphasis added).

We are not persuaded. Defendant points to no case holding that the use of the word "representation," by itself, *necessarily* implies a materiality element. *Cf. United States v. Wells*, 519 U.S. 482, 494 (1997) (noting that the use of the word "representation" could possibly imply a materiality requirement); *Kungys v. United States*, 485 U.S. 759, 781 (1988) (noting that the word "*mis*representation" has been read to imply a materiality requirement (emphasis added)); *United States v. Nash*, 115 F.3d 1431, 1436 (9th Cir. 1997) (suggesting that "[t]he term 'representation' has been held to include some notion of materiality at common law" but also relying on the fact that the statute concerned fraud, which required materiality at common law).

Here, there is good reason to reject Defendant's suggestion that we require the government to prove that a falsehood

related to the lawfulness of the sale before it can obtain a conviction under § 924(a)(1)(A). First, context matters. Section 924(a)(1)(A) is not a general fraud statute, of the type at issue in *Neder* and *Nash*. In *Nash*, we noted that the Supreme Court "disfavors inferring a materiality requirement where the statutory language does not expressly include one." 115 F.3d at 1436. In deciding whether such an inference would be appropriate, we relied not only on the use of the word "representation," but also on the "overall nature of the provision." *Id.* Because the statute was concerned with fraud, rather than with simply making false statements, we deemed it more likely that a materiality element was implied. *Id.* Similarly, in *Neder*, the Court relied on the use of the term "fraud," not on the term "representation," to conclude that a materiality element was implied, even though both terms were present in the statutes at issue. 527 U.S. at 20-23.

Nor does § 924(a)(1)(A) criminalize a broad range of false statements. To the contrary, the statute limits the types of falsehoods that are actionable to those that relate to information required under law to be kept by federally licensed firearms dealers. It makes sense that Congress would wish to ensure the accuracy of all the information that firearms dealers must keep as part of their permanent records, whether or not that information relates to the lawfulness of the ultimate sale. There is testimony that the accuracy of the information contained on Form 4473, including the name and address of the actual buyer, is of paramount importance to investigators when tracing weapons used in violent crimes. Under Defendant's interpretation, an eligible buyer could give a false name or address, but escape criminal liability under § 924(a)(1)(A). We do not think that Congress intended such a result, which contradicts the text of the statute. *Cf. Prince*, 647 F.3d at 1268 (affirming a conviction under § 924(a)(1)(A) for knowingly providing a false address on Form 4473).

**[4]** In short, we honor the clear text of the statute and its context, and we join our sister circuits, when we conclude that

the government need not prove that Defendant's false statements related to the lawfulness of the underlying sales in order to sustain a conviction under § 924(a)(1)(A). Instead, the government need prove only that Defendant knowingly made a false statement with respect to the information required under law to be kept by federally licensed firearms dealers. On that issue, the government introduced sufficient evidence by proving that Defendant falsely identified himself as the "actual buyer" of the firearms on the two Form 4473s.

   2.   *The district court properly decided as a matter of law that Form 4473 was required to be kept by licensed firearm dealers.*

Defendant next argues that the district court erred by deciding as a matter of law that the "actual buyer" question on Form 4473 constituted information required by law to be kept by federally licensed firearms dealers. He contends that the issue should have been submitted to the jury as an element of the offense. We review de novo "whether the district court's instructions omitted or misstated an element of the charged offense." *United States v. Cherer*, 513 F.3d 1150, 1154 (9th Cir. 2008) (internal quotation marks omitted).

Here, the district court instructed the jury as follows:

> In order for the defendant to be found guilty . . . the government must prove each of the following elements beyond a reasonable doubt.
>
>    First, Shooters Supply Company was a licensed firearms dealer; and
>
>    Second, in connection with acquiring firearms from Shooters Supply Company, defendant made a false statement on Bureau of Alcohol, Tobacco, Firearms & Explosives Form 4473, Firearms Transaction Record; and

Third, the defendant knew the statement on Form 4473 was false.

**[5]** The district court properly ruled as a matter of law that the "actual buyer" question on Form 4473 was "information required by this chapter to be kept in the records of a person licensed under this chapter." 18 U.S.C. § 924(a)(1)(A). The relevant statutes and regulations make clear that the information on Form 4473 is indeed required to be kept by federally licensed firearms dealers. Title 18 U.S.C. § 922(b)(5) directs licensed dealers to maintain records containing "the name, age, and place of residence" of all individual buyers. Title 18 U.S.C. § 923(g)(1)(A) states that licensed dealers must maintain "such records of . . . sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." The Attorney General has promulgated such regulations, including 27 C.F.R. § 478.124, which provides:

> (a) A licensed importer, licensed manufacturer, or licensed dealer shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person, other than another licensee, unless the licensee records the transaction on a firearms transaction record, Form 4473 . . . [and] (b) . . . shall retain . . . as part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms.

The question whether the information on Form 4473 satisfied the requirements of § 924(a)(1)(A) was thus entirely a matter of law, which the district court correctly resolved. *See United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc) ("The construction or interpretation of a statute is a question of law . . . ."); *see also United States v. Soto*, 539 F.3d 191, 198 (3d Cir. 2008) (affirming a conviction under § 924(a)(1)(A) and holding that "whether the 4473 form, and its contents, were 'required by this chapter' to be kept by the

federal firearms licencee was purely a legal matter. This legal issue was within the province of the trial judge to decide.").

B. *The district court provided adequate instructions on witness credibility.*

Defendant argues that the district court erred by refusing his request for an admitted perjury instruction and by failing to provide adequate instructions on impeachment. We review for abuse of discretion the district court's decision not to give particular instructions about witness credibility. *United States v. Holmes*, 229 F.3d 782, 786 (9th Cir. 2000). The relevant "inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations." *Id.* (internal quotation marks omitted).

Defendant claims that Pedroza perjured himself by asserting, in a written statement to police, that Defendant had met Pedroza's cousin but later contradicting that statement during his testimony at trial. On cross-examination, Pedroza testified that Defendant and Pedroza's cousin had never met, and then he equivocated when defense counsel impeached him with his prior inconsistent statement. Defendant asked the district court judge to give additional jury instructions discussing impeachment and labeling Pedroza a perjurer. The court declined to do so.

**[6]** "We evaluate the district court's jury instructions by considering the instructions as a whole in the context of the entire trial." *United States v. Sai Keung Wong*, 886 F.2d 252, 257 (9th Cir. 1989). Here, the court's instructions to the jury were not "misleading or inadequate to guide the jury's deliberations." *Holmes*, 229 F.3d at 786 (internal quotation marks omitted). The court explained to the jurors that the witness' credibility was an open question for them to decide and specifically cautioned the jury about believing Pedroza. As permitted by those instructions, the defense also pointed out Pedroza's alleged perjury to the jury. *See Sai Keung Wong*,

886 F.2d at 257 (noting that "[t]he defense was allowed to point out [the witness'] perjury to the jury"). Thus, "[t]he trial court's instructions as a whole adequately informed the jury of the need to be cautious in evaluating the [perjured witness'] credibility." *Id.*

   AFFIRMED.